ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
JAMES R. KNAPP
Arizona State Bar No. 021166
Email: james.knapp2@usdoj.gov
GARY M. RESTAINO
Arizona State Bar No. 017450
Email: gary.restaino@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>George Cotrel,<br><br>　　　　　Defendant. | No. CR-16-0879-PHX-DJH<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States agrees with the calculations in the Presentence Investigation Report (PSR) and asks the Court to accept the plea agreement and sentence Defendant George Cotrel to eight months of imprisonment. As explained below, the nature and circumstances of the offense are quite serious and the need for general deterrence is significant. But Cotrel's history and circumstances suggest that a sentence of eight months of imprisonment—the low end of the advisory sentencing range as calculated in the PSR—would be sufficient.

I.   Statement of Facts

Cotrel pleaded guilty to wire fraud on December 19, 2016, as a result of his participation in a scheme to steal money by posing as a professional money launderer on the "dark web." (CR 26 (Plea Agreement) at 6.) IRS-CI undercover agents began communicating with Cotrel in March 2014 after responding to an advertisement for

money laundering services found on a TOR black market site called Evolution Marketplace. (*See* PSR 4 ¶¶ 7-9; *see also* Andy Greenberg, *The Dark Web's Top Drug Market, Evolution, Just Vanished*, Wired Magazine, March 2015 (describing "the size of Evolution's market, with nearly 20,000 drug product listings as well as thousands more items ranging from weapons to stolen credit cards"), available at https://www.wired.com/2015/03/evolution-disappeared-bitcoin-scam-dark-web/.) TOR is an acronym for The Onion Router, which is a mechanism to anonymize internet traffic. TOR also enables access to certain websites accessible only through the TOR network; these websites are known as TOR hidden services, or the "dark web." *See, e.g.*, Joshua Bearman, *The Rise & Fall of Silk Road*, Wired Magazine, May 2015 (describing investigation into dark web drug bazaar), available at https://www.wired.com/2015/04/silk-road-1/.

The IRS-CI undercover agents posed as drug dealers with large amounts of cash they needed to conceal. (PSR 4 ¶ 8.) Cotrel, calling himself "Bill" and otherwise masking his true identity, communicated with the undercover agents via encrypted instant messaging platforms and proposed a variety of methods he could use to disguise their drug profits, evade federal income taxes, and promote the continuation of their drug business. (PSR 4 ¶ 11.) Cotrel claimed to have contacts at banks that he could use to funnel drug money to off-shore accounts and then transfer back to domestic accounts disguised as legitimate business income. (PSR 5 ¶ 11.)

The agents met with Cotrel in person at a meeting in Las Vegas, Nevada, in April 2014. (PSR 4 ¶ 11.) Cotrel was surprisingly young—approximately twenty years old at the time—but the IRS-CI agents were impressed with his knowledge of finance, U.S. government procedures, and anti-money laundering laws. After the Las Vegas meeting Cotrel directed the agents to send $20,000 in purported drug proceeds to his associate in Colorado, who would convert the cash to Bitcoin and then transmit the proceeds to Cotrel to be laundered back to the agents. This test transaction never worked out; Cotrel's associate—who was prosecuted for unrelated conduct in Colorado—stole the money

instead of passing it along to Cotrel. (PSR 5 ¶ 16.)

Cotrel met with undersigned counsel and IRS-CI agents prior to his guilty plea in this case to provide additional information about his role in the offense and how he became involved. The IRS-CI agents never ultimately confirmed whether Cotrel was a professional money launderer, as he claimed to be during the undercover operation. And although Cotrel had the requisite experience (through his work in the financial industry) and predisposition (through the dark web marketing) to commit the crime (PSR 10 ¶¶ 58, 61), the United States has no evidence to show that Cotrel actually engaged in any money laundering schemes prior to the charged conduct. But the evidence reflects a clear intent and significant effort on his part in this case to use his knowledge and financial sector experience to engage in, and to conceal, criminal activity.

II.     Sentencing Recommendation

The United States agrees with the calculations in the PSR and asks the Court to accept the plea agreement and sentence Cotrel to eight months of imprisonment. Whether Cotrel intended to participate in a money laundering operation via the "dark web" or merely elected to participate in a fraud scheme, the "nature and circumstances of the offense" are quite serious and the need for general deterrence is significant. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B). "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). Plus, the "dark web" facilitates a platform for all sorts of nefarious activity, and the use of encrypted communications and virtual currencies such as Bitcoin make it difficult for law enforcement to identify the perpetrators. For all of these reasons, a significant sentence is warranted to show that such activity has a cost, even where—as here—there is no evidence to show that the scope of Cotrel's illegal activities extend beyond the charged offenses.

Cotrel's history and circumstances, however, suggest that an eight-month sentence would be sufficient. It is the low end of the advisory range recommended by the U.S.

Sentencing Guidelines based on an assessment of his conduct in this case. *See* 18 U.S.C. § 3553(a)(4), (6). It also accounts for Cotrel's willingness to plead guilty promptly, accept responsibility for his actions, and provide federal agents additional information after arrest.

III. <u>Conclusion</u>

For all of these reasons, the United States asks the Court to accept the plea agreement and sentence Cotrel to eight months of imprisonment, the low end of the advisory sentencing range.

Respectfully submitted this 21st day of February, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

*s/ James R. Knapp*

JAMES R. KNAPP
GARY M. RESTAINO
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on 2/21/2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Mike Kimerer

 *s/ James Knapp*
U.S. Attorney's Office