UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | CR-16-0879-PHX-DJH |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | March 1, 2017 |
| George Cotrel, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING


APPEARANCES:
For the Government:
          U.S. Attorney's Office
          By: JAMES RICHARD KNAPP, ESQ.
              GARY MICHAEL RESTAINO, ESQ.
          40 North Central Avenue, Suite 1200
          Phoenix, AZ  85004

For the Defendant Cotrel:
          Kimerer & Derrick
          By: MICHAEL D. KIMERER, ESQ.
          1313 East Osborn Road, Suite 100
          Phoenix, AZ  85014

Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1          THE CLERK:  This is case number CR 16-879,

2     United States of America versus George Cotrel, on for

3     sentencing.

4          MR. KNAPP:  Good morning, Your Honor.  Jim Knapp and

5     Gary Restaino for the United States.

6          THE COURT:  Good morning.

7          MR. KIMERER:  Good morning.  Michael Kimerer on behalf

8     of Mr. Cotrel, who is in custody, and we're prepared to proceed

9     with sentencing at this time.

10          THE COURT:  Good morning.  Would you please proceed to

11     the podium.

12          And good morning, Mr. Cotrel.

13          THE DEFENDANT:  Good morning.

14          THE COURT:  Now, Mr. Cotrel, this is the time set for

15     entering judgment and sentencing on your case.  In a prior

16     hearing before this Court, you entered a guilty plea to Count 5

17     of an indictment charging you with wire fraud, in violation of

18     Title 18 United States Code Section 1343.  I have once again

19     reviewed the terms of your plea agreement with the government,

20     and I will accept your plea agreement at this time.

21          I now find you guilty of the offense.

22          I have also received and I have reviewed the

23     presentence investigation report that was prepared in your

24     case, and the Court notes the presence of the probation officer

25     here.

1              Did you have an opportunity to read the entire

2    presentence investigation report?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And did you go through that report

5    with your counsel?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Was he able to answer all of your

8    questions about what is contained in this presentence

9    investigation report to your satisfaction?

10              THE DEFENDANT:  Absolutely.

11              THE COURT:  And are you satisfied with the services of

12    your counsel?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  Now, in addition to the presentence

15    investigation report, I have received and I have reviewed a

16    number of character letters that were written on your behalf,

17    and they are from Richard Li -- Richard Knight, excuse me, Mary

18    Lady Manton, and Fiona Cottrell.  Has the government had an

19    opportunity to review those letters?

20              MR. KNAPP:  Yes, Your Honor.

21              THE COURT:  In addition to those letters, I have also

22    received the government's sentencing memorandum, and I have

23    received a memorandum from your counsel with regard to

24    sentencing.

25              Now, I have no objections to the presentence

1    investigation report, Mr. Kimerer.  Is that correct?

2            MR. KIMERER:  That is correct, Your Honor.

3            THE COURT:  And I have no objections from the

4    government.  Is that also correct?

5            MR. KNAPP:  That's correct, Your Honor.

6            THE COURT:  There being no objections to the

7    presentence investigation report, I will adopt the findings and

8    the advisory guidelines in the report.

9            Mr. Cotrel, your total offense level is 11.  Your

10   criminal history category is I.  And that results in a

11   sentencing guideline range of 8 to 14 months in custody.  Your

12   plea agreement provides that your sentence shall not exceed the

13   low end of the sentencing guideline range, and that is in your

14   case eight months.  I will note to the parties that there is a

15   provision in your plea agreement that any restitution shall be

16   made within seven days of your sentencing, which is today's

17   date.

18           Now, before the Court imposes a sentence, is there

19   anything that you wish to say on your own behalf?

20           THE DEFENDANT:  Your Honor, in addition to my letter

21   to you dated February 21st, I wish to reiterate that I fully

22   accept responsibility for my actions.  There is no excusing my

23   gross error of judgment in regards to this matter.  I would

24   like to apologize to everyone who I have let down.  Thank you.

25           THE COURT:  Thank you, Mr. Cotrel.

1          Just one moment.  I want to make sure -- You

2    referenced a letter to me, and I don't recall receiving that

3    letter.

4          Has counsel for the government received a copy of that

5    letter?

6          MR. KNAPP:  I don't think so, Your Honor.  It doesn't

7    ring a bell.

8          THE COURT:  Mr. Kimerer?

9          MR. KIMERER:  No, I don't believe they have.  As a

10   matter of fact, I didn't realize he sent it directly to you

11   until just recently, that he had written a letter and sent it

12   to you personally.  Normally that would have gone through me,

13   and I would have gone through the normal process of getting it

14   to you.

15         THE COURT:  Mr. Cotrel, when did you send that letter?

16         THE DEFENDANT:  I sent it approximately on the 20th of

17   February to your chambers.

18         I'm sorry.  I would have sent it on the 21st of

19   February, which was a Tuesday, I believe.

20         THE COURT:  Well, generally there is a process by

21   which correspondence gets sent to the Court, and it's usually

22   through the counsel.  And so we may or may not have received

23   that letter.  In any event, what we end up doing is sending

24   that letter to your counsel.  And so if Mr. Kimerer has not

25   received it, then certainly we haven't received it at least at

1      this date at this stage.

2              And so perhaps, Mr. Cotrel, knowing that I have not

3      received that letter, now is the time to let me know I think as

4      best as you can fully to inform me of what is stated in that

5      letter so that I can have the full understanding of what you

6      conveyed to the Court.

7              THE DEFENDANT:  I'm sorry.  That was a mistake on my

8      behalf, not realizing procedures.  All I can say is that I

9      accept full responsibility for my actions, and I do not shy

10     away from the consequences, and that I am truly sorry for my

11     actions and to everyone I have harmed.  Thank you.

12             THE COURT:  Well, before I let your counsel speak in

13     terms of his sentencing recommendation, there are a couple of

14     questions that I have for you, Mr. Cotrel.

15             Given your background and knowing what is written in

16     the presentence investigation report, understanding the

17     sentencing guideline range and the provisions of your plea

18     agreement, it's obvious to me what is going to occur here.

19             You will ultimately be removed from the United States.

20     And the question that looms in my mind is given the fact that

21     you have no high school diploma, you do apparently have some

22     background or education in finance and how finance industries

23     work.  You have lived a very privileged life.

24             And what is missing in the presentence investigation

25     report is how you intend to sustain yourself.  It's clear to me

| | |
|---|---|
| 1 | from the character letters that I've received that although at |
| 2 | some point you believe your family is estranged from you, they |
| 3 | support you fully and that they are anxious to reunite with |
| 4 | you. |
| 5 | But at the same time the question that looms in my |
| 6 | head is what are you going to do for employment, work, and |
| 7 | sustaining yourself, given the background that you have?  And |
| 8 | how is it that you are going to not find yourself in a |
| 9 | circumstance like this? |
| 10 | THE DEFENDANT:  I appreciate things are going to be |
| 11 | difficult post this event.  It is my intention to enter some |
| 12 | further education to complete my education that I was unable to |
| 13 | do previously, you know, while I rebuild my reputation and |
| 14 | repair ruined relationships.  I would -- I seek to undertake |
| 15 | some advocacy or some pro bono work while I'm completing my |
| 16 | education. |
| 17 | THE COURT:  But do you understand that volunteering |
| 18 | and pro bono work isn't going to draw down a salary?  And |
| 19 | that's my primary question.  How are you going to sustain |
| 20 | yourself economically, have a roof over your head, pay for |
| 21 | education, and not find yourself in this situation? |
| 22 | THE DEFENDANT:  Well, I'm not entirely sure, to be |
| 23 | honest, Your Honor.  I've battled a years-long multimillion |
| 24 | dollar gambling addiction.  I've been disinherited.  I don't |
| 25 | think as a result of this I have any employment opportunities. |

1        I think I just have to try.

2                THE COURT:  Thank you.  Mr. Kimerer.

3                MR. KIMERER:  Yes, Your Honor.  Addressing actually

4        the last question of the Court, because I've been in contact

5        with his parents, when all of this happened, he was only 20

6        years old.  It was a very dark period in his life, I think as

7        you can tell from our sentencing memorandum and even the

8        background in the presentence report.

9                He had a horrible gambling addiction.  I know the

10       parents are planning, one of the first things to do when he

11       returns there, to address that with some type of

12       rehabilitation.

13               In terms of employment, the reason he had not been

14       employed before by his parents or other family members is

15       basically because he was considered to be somewhat of a black

16       sheep, and he was basically disinherited at that time.

17               Everything I have heard from his parents, they were

18       going to do everything to support to find work for him, and

19       they have plenty of places where he can do all of that.

20               So they have addressed that problem and have addressed

21       it with him.  And so there will be places where he will have

22       their support again, as you can tell from the letters.

23               There's been -- A positive part of this whole thing

24       has been there's been reunification with his family because of

25       this.  And they have come back to stand behind him.  So from

1    that standpoint, I think he will have support that will keep

2    him from getting in any trouble.

3           One of the things I think to note too is when he was

4    doing this, he was 20 years old.  And basically after this one

5    particular event in his life, which was somewhat aberrant,

6    abnormal, made huge mistakes, there's a period here for about

7    two to three years he was being a law abiding citizen.  He was

8    engaged in activities at that time.  I know he liked politics

9    and was involved in that to some degree.  But this was the only

10   criminal part of his life, was this episode right here.  So

11   following this there's almost three years where there was

12   nothing when he was arrested.

13          I would ask the Court in his case to follow the

14   sentencing recommendation.  It's an eight-month sentence.  The

15   only thing I would ask -- and I've mentioned it in my

16   presentence memorandum -- that if we could give him a time

17   served sentence.  He's already served 222 days, which is 21

18   days less than the eight months, which is under the plea

19   agreement.

20          I've had a recent experience in court that he's going

21   to have to go into custody of ICE right away as soon as he's

22   released, and I just had a similar situation where someone had

23   to be deported.  It takes anywhere from five to six weeks, even

24   when you've agreed to deportation and waive everything, for

25   that process to happen.

1          And I would ask that that be considered in terms of

2     even a sentence in itself, which would certainly fulfill an

3     eight-month sentence.  And so therefore I'm asking for a time

4     served sentence on his behalf.

5          THE COURT:  So it's your understanding, Mr. Kimerer,

6     that because of the looming deportation potential, he would

7     remain in a custody setting?

8          MR. KIMERER:  He has to remain in custody, Your Honor,

9     yes.

10         THE COURT:  Thank you, Mr. Kimerer.  And as I

11    mentioned, I did receive the government's sentencing memorandum

12    as well.

13         And, Mr. Restaino, Mr. Knapp, who wishes to speak on

14    behalf of the government?

15         MR. KNAPP:  Your Honor, I'll speak, but I'll be very

16    brief, because we said most of what we wanted to say in that

17    memorandum.  We do recommend eight months.  That's of course

18    the low end that the plea agreement contemplates.

19         If the Court thinks that a time served sentence is

20    appropriate, we have no objection to that, but we do recommend

21    eight months.

22         We'll also note that since the removal from the

23    United States came up, we did coordinate with Immigration and

24    Customs in advance to make sure they're aware of it so they're

25    ready to get him and effectuate that removal.  It should be a

1    pretty streamlined process because, without getting into too

2    much of the weeds, this is a, as I understand it, a visa waiver

3    visitor situation, which is a more streamlined process for

4    removal than a standard deportation proceeding.  He came in as

5    a visa waiver visitor from the UK, and he will be returned as a

6    visa waiver overstay.  That's my understanding.

7           The second thing I wanted to mention is, as discussed

8    in more detail in the sentencing memorandum, is, you know, we

9    do see this as being a significant crime in that the Dark Web

10   can be a hotbed of criminal activity, and, you know, the use of

11   anonymity and encryption and all of that makes it very

12   difficult to catch people.

13          But, on the other hand, we fully recognize that there

14   are some mitigating circumstances in this defendant, and we

15   wish him the best of luck in the future and hope that we never

16   see him again in this context.

17          And the only final comment is that we dismiss the

18   remaining counts of the indictment per the plea agreement.

19          THE COURT:  I guess I have one final question with

20   respect to the provisions of the plea agreement, and that is,

21   as I noted earlier, there is a statement that within seventy --

22   excuse me -- within seven days of today's date, that Mr. Cotrel

23   will fulfill his restitution obligation.  I note the

24   recommendation is to be a joint and several restitution

25   agreement with the individual in the Colorado case.

1     And so how are the parties intent on fulfilling that

2     provision of the plea?

3            MR. KIMERER:  I have addressed that with his parents.

4     They're prepared to send the full amount of restitution.

5     Whether they could get it here in seven days or not, I'm not

6     sure.  It should be able to be -- to happen because it's a wire

7     transfer, but I know they're planning to pay that on his

8     behalf.

9            THE COURT:  Is that your understanding, Mr. Knapp?

10            MR. KNAPP:  I of course haven't been in contact with

11     the parents, but that's -- I'm sure we can work that out, Your

12     Honor.  I'm confident.

13            THE COURT:  All right.  Well, is there anything

14     further, Mr. Knapp?

15            MR. KNAPP:  I don't think so, Your Honor.  Thank you.

16            THE COURT:  Mr. Cotrel, in our system here, we have

17     to, every judge, has to consider a number of sentencing factors

18     that our Congress tells us that we have to consider, including

19     those factors in 18 U.S.C. 3553(a).  They are the sentencing

20     factors I'm sure your counsel has informed you about.

21            They include the nature of the crime that you are now

22     guilty of, your background and character, your criminal

23     history, what that reflects about you, whether or not you're in

24     need of a deterrent sentence, rehabilitation, what is just

25     punishment under your circumstance, and what is a sentence that

1    is sufficient but not any greater than necessary to fulfill all

2    of the objectives of these sentencing factors and your

3    situation.

4            Here you did, as we've discussed, admit to a count of

5    wire fraud.  This involved posing as a financier who

6    essentially put yourself out there as capable of laundering

7    money.  You advertised your services on this TOR network,

8    essentially the black-market Web, and put your services out

9    there to essentially criminal enterprises, individuals who are

10   in need of secreting away illegal proceeds, whether it be from

11   drugs or any other illegal activity.

12           Now, that in and of itself takes some concentration,

13   some planning, some knowledge about what it is that you are

14   doing.

15           Here you went a step further, and this is what is

16   concerning to the Court.  Not only did you have a sophisticated

17   knowledge of how this Dark Web operates, but your planning

18   included actually personally meeting with undercover

19   individuals who put themselves out there as in need of your

20   services.

21           And to actually put yourself in a physical situation

22   in the presence of these individuals shows one of two things.

23   It shows a person who is purposefully involved in wanting to

24   get involved in this kind of activity or somebody who is

25   extremely desperate.  And I think in your situation, we may

1    have a little bit of both.  It may be somewhat intertwined

2    because of your circumstance, personally, financially, but also

3    this seemed to be a very easy way to make quick money.  And

4    it's a very dangerous way to make quick money.

5            The other thing that concerns me here, Mr. Cotrel, is,

6    as you know, there was another individual that, at least by my

7    reading of the information, helped you or you either solicited

8    this individual, but in some way this individual was sort of

9    following your lead.  And in so doing, apparently these

10   individuals that operate on the Dark Web, she essentially took

11   proceeds that were potentially meant for you.  And so there's

12   another individual who has now had a conviction attached to

13   her.

14           And so I find the crime here to be very serious.  It

15   took knowledge.  It was purposeful.  It was deliberate.  And in

16   your circumstance, you put yourself in a situation that, you

17   know, frankly, in some ways maybe you should be very lucky that

18   you're standing here today.

19           Now, as to your background and character, we've

20   discussed a little bit about that.  It comes through in the

21   letters that have been received by the Court, your interview

22   with the presentence investigation report.  You have lived a

23   very privileged life.  You did come into some circumstance

24   in your high school years that created some of this dilemma for

25   you.

1          I've expressed my concern to you already about what

2    you do going forward so that you don't find yourself in these

3    situations.  But essentially, as your counsel stated and as the

4    government's counsel mentioned, you're not a bad person.

5    You're a young man.  You've -- I think in some ways the fact

6    that you've had much given to you early on and throughout your

7    life and then to find it all taken away because of the

8    circumstances that you found yourself in as a young man I

9    suspect is part of the reason why you're here today.

10          But that said, I think you have now your lifetime --

11          You're, what, 23 years old?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  -- to build character, to build a

14    reputation, as you say, to repair your image and those

15    relationships that have been damaged over the course of years.

16          And so the Court has very little to go on in terms of

17    your background and character other than what is written in the

18    report.  You have your lifetime to build and rebuild that

19    character.

20          Your criminal history, to your credit, you're in a

21    criminal history category of I, and that's because you have

22    little if any or no criminal history to speak of, and that is

23    to your credit.

24          And the deterrent effect, I suspect you probably never

25    thought that you would find yourself in an orange jumpsuit

1    having to be escorted by marshals and Department of Corrections

2    officials.  And so I assume that there is a deterrent effect

3    from your current situation.

4           Nevertheless, because of the seriousness of the

5    offense, your need for rehabilitation, the fact that there was

6    deliberate planning, purposeful planning, I do believe that

7    following the presentence report writer's recommendation is

8    warranted here.  It is, after all, at the low end of the

9    sentencing guideline range.

10          Now, given -- and I will leave these words with you,

11   Mr. Cotrel -- given the very short supervised release term that

12   the Court will affix and knowing that you are going to be

13   removed from the United States, what you do next is really

14   up to you.  If in fact you want this episode behind you and you

15   want to start fresh, you and your family will see that you get

16   whatever help it is that you need to get yourself back on track

17   to address the issues that are stated in your counsel's

18   sentencing memorandum and to find a way to make a living for

19   yourself on your own with obviously some of the talents that

20   you bear but in a legitimate way.

21          And so is there any legal reason why sentence should

22   not now be imposed?

23          MR. KNAPP:  None, Your Honor.

24          MR. KIMERER:  No legal reason, Your Honor.

25          THE COURT:  Pursuant to the Sentencing Reform Act of

1984, it is the judgment of the Court that you, George Cotrel,

are hereby committed to the Bureau of Prisons for a term of

eight months.  You shall pay a special assessment of $100,

which shall be due immediately.  The Court finds that you do

not have an ability to pay a fine and orders that the fine be

waived.

On release from custody, you shall be placed on

supervised release for one year.  And while on supervised

release, you shall comply with the standard conditions of

supervision adopted by this Court in its General Order 16-23.

Of particular importance, you shall not commit another

federal, state, or local crime while on supervised release, and

you shall comply with the following additional terms of

supervision:

If you are not deported from the United States, within

72 hours of being released from custody, you shall report to

the U.S. Probation Department in the district that you will be

released from, and you shall comply with the following

additional condition:

That if you are deported, you shall not reenter the

United States without express legal authorization to do so.

Now, Mr. Cotrel, in your plea agreement, with two

exceptions, you have given up your right to appeal the judgment

and sentence in your case so long as the sentence you received

complied with the terms of your plea agreement.  Because you

1    received a sentence that does comply with the terms of your

2    plea agreement, do you understand that you have given up your

3    right to appeal the judgment and conviction in your case?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Now, despite waiving your right to appeal,

6    if for some reason you feel that you wish to appeal, you only

7    have 14 days in which to file your notice of intent to appeal,

8    and your counsel can advise you with regard to that.

9              The government has moved pursuant to the plea

10   agreement to dismiss the remaining counts of the indictment

11   against you, and those remaining counts will be dismissed.

12             And it is ordered that the parties shall inform the

13   Court when the restitution payment is received, and that is to

14   be -- should be within eight days of today's date of the

15   hearing.

16             Now, Mr. Cotrel, I do want to just add:  Because you

17   are a young man, I want to reiterate something that both the

18   government and Mr. Kimerer has stated.  You can put this behind

19   you.  It's really up to you.  You're not a bad person.  This is

20   a sentence that is meant to reflect how serious the crime is.

21   And so it's up to you now to go forward and to live the life

22   that you feel that you can.  You've got much to contribute.

23   You're a very smart person, and that's evidenced by some of the

24   things that you've done in the past.  And so this does not need

25   to define you.  And so it's up to you to go forward from here.

1    Is there anything further from counsel?

2    MR. KNAPP:  Your Honor, you referenced the restitution

3    and having the parties notify the Court once it's paid, and

4    we'll absolutely do that.  I think one thing that I didn't hear

5    was a specific oral pronouncement of the ordering of the

6    restitution.

7    I gather that the Court is ordering the defendant to

8    pay restitution to the Internal Revenue Service in the amount

9    of $30,000, $20,000 to be jointly and severally with Katherine

10   Noland in District of Colorado case number 14-401-RM, and then

11   $10,000 from the defendant to the IRS as his sole

12   responsibility.  Is that correct?

13   THE COURT:  That sounds precisely what I was supposed

14   to say.

15   So, Mr. Kimerer, do you agree?

16   MR. KIMERER:  Yes, I agree.  The only thing I would

17   ask, in connection with the joint and several liability, if

18   someone can see how much has been paid down from that side of

19   the case so there's credit for that from that standpoint so we

20   can have an exact amount he needs to pay on the $20,000.

21   THE COURT:  Can I rely upon the government to provide

22   that information before the issuance of that wire transfer of

23   restitution?

24   MR. KNAPP:  Absolutely, Your Honor.

25   THE COURT:  All right.  And so if there's nothing

1   further, yes, we will add that into the judgment and commitment

2   order, and that is my understanding, as stated in the

3   presentence investigation report, that that payment is to be

4   joint and several, and there's a specific amount payable to the

5   IRS.

6           Is there anything further?

7           MR. KNAPP:  Nothing, Your Honor.  Thank you very much.

8           MR. KIMERER:  Nothing further, Your Honor.

9           THE COURT:  Thank you, counsel.

10      (Proceedings recessed.)

1        <u>C E R T I F I C A T E</u>

2

3            I, LINDA SCHROEDER, do hereby certify that I am duly

4   appointed and qualified to act as Official Court Reporter for

5   the United States District Court for the District of Arizona.

6            I FURTHER CERTIFY that the foregoing pages constitute

7   a full, true, and accurate transcript of all of that portion of

8   the proceedings contained herein, had in the above-entitled

9   cause on the date specified therein, and that said transcript

10  was prepared under my direction and control.

11           DATED at Phoenix, Arizona, this 31st day of May, 2017.

12

13

14                                  s/Linda Schroeder
                                 Linda Schroeder, RDR, CRR
15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT